## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

**ABUNDANT LIFE CHURCH**
**OF GOD IN CHRIST**

**CASE NO. 12-08617-8-SWH**

**CHAPTER 11**

**DEBTOR**

### PLAN OF REORGANIZATION

#### Article I
#### Summary

*Pursuant to 11 USC §1125(f)(1), the Debtor requests that the Court determine that this plan itself provides adequate information and that a separate disclosure statement is not necessary.*

Abundant Life Church of God in Christ filed a bankruptcy case under chapter 11 on December 6, 2012.

The debtor is a church located in southeast Raleigh with a weekly attendance of approximately 1500. The church is led by Pastor Stenneth E. Powell, Sr., who founded the church in 1990. Today, the church and Pastor Powell enjoy the respect of the local community and the church's wider intra-denominational relationships.

The debtor's chapter 11 filing was brought about by its defaulting on a loan to Foundation Capital Resource Group (FCRG) in the amount of $3,769,988. This loan is secured by real property with a scheduled value of $7,000,000.

With this Plan, the debtor proposes a payment schedule where its general unsecured creditors are paid in full and a modification of its loan with FCRG is obtained.

Questions about this plan or the debtor should be directed to debtor's counsel at:

Sasser Law Firm
2000 Regency Parkway
Suite 230
Cary, NC 27518
(919)-319-7400

**The effective date of this plan is May 1, 2013.**

**Assets:** The debtor owns real estate located at 4400 Old Poole Road, Raleigh NC with a scheduled value of $7,000,000. Both the property and its encumbrances are further detailed in Exhibit A.

In addition to its real estate, it owns fixtures, furniture, computers, and vehicles in the amount of approximately $84,375.

**Debts:** Debtor has debt secured by its real estate, disputed priority tax debt, general unsecured debt, and insider loans made by Pastor Powell.

**Income and Expenses:** Debtor projects gross income of approximately $95,000 per month and total monthly post-confirmation expenses of $92,767. For more information, see Exhibit B.

**Absolute Priority Rule:** Because the debtor is a non-profit entity, the absolute priority rule is not applicable.

**Article II**
**The Plan**

### Administrative Claim

| | | |
|---|---|---|
| Sasser Law Firm | Claim: $11,046 | The remaining balance of attorney fees will be paid upon the confirmation of the plan. |

### Class I - Priority Tax Debt

The IRS has filed a priority tax claim arising from three different periods (3/31/2010, 12/31/2010, and 12/31/2012) totaling $32,257.65. The debtor disputes this debt and intends to object to the IRS's claim in the event that the parties cannot reach an agreement. The treatment detailed below considers the claim to be presumptively valid, as the court does, but the debtor does not believe that such a treatment will be ultimately necessary.

| | | | |
|---|---|---|---|
| Internal Revenue Service | Claim: $32,075.34 | Treatment: Paid in full between May 1, 2013 and December 1, 2017 at 4% interest. | $651 per month |

### Class II – Loan secured by vehicle

| | | | |
|---|---|---|---|
| | | Treatment: Paid in | |

| Vantage South Bank | Claim: $4,512 | full over sixty months at 5.25% interest. | $86 per month |

## Class III: Deed of Trust in favor of FCRG secured by 4400 Old Poole Road, Raleigh NC

Debtor proposes to impair the secured claim of FCRG by re-amortizing the loan balance of $3,769,988 (along with all pre-petition fees, costs, penalties and arrears) at an interest rate of 5.25% for 20 years, with a seven-year call.

| FCRG | Claim: $3,769,988 | Treatment: Paid in full (including fees and costs) at 5.25% amortized over twenty years, with a seven year call. | $25,404 per month |

## Class IV: General Unsecured Creditors

Debtor proposes to impair the general unsecured creditors by paying them in full over a period of five years in quarterly payments.

| Budget Rental Car | Claim: $1,600 | Treatment: Paid in full over 5 years. | $80 per quarter |
| Dell | Claim: $1,578 | Treatment: Paid in full over 5 years. | $79 per quarter |
| Exxon Mobil/Citi | Claim: $8,421 | Treatment: Paid in full over 5 years. | $422 per quarter |
| Santander Consumer | Claim: $15,000 | Treatment: Paid in over 5 years. | $750 per quarter |
| Smith, Moore, Leatherwood | Claim: $14,000 | Treatment: Paid in full over 5 years. | $700 per quarter |
| Summit Processing, Inc. | Claim: $13,907 | Treatment: Paid in full over 5 years. | $696 per quarter |
| Vantage South Bank (four claims) | Total claim amount: $25,733 | Treatment: Paid in full over 5 years. | $1,287 per quarter |

| Archie Simmons | Claim: $700 | Treatment: Paid in full over 5 years. | $35 per quarter |
| Bryant Heyward | Claim: $1,996 | Treatment: Paid in full over 5 years. | $100 per quarter |
| Gabriel Sharpe | Claim: $3,600 | Treatment: Paid in full over 5 years. | $180 per quarter |
| Gerald Denis | Claim: $1,847 | Treatment: Paid in full over 5 years. | $93 per quarter |
| Joshua Powell | Claim: $200 | Treatment: Paid in full over 5 years. | $20 per quarter |
| Justin Henry | Claim: $1,000 | Treatment: Paid in full over 5 years. | $50 per quarter |
| Mable Bullock | Claim: $1,366 | Treatment: Paid in full over 5 years. | $69 per quarter |
| Michael Smallwood | Claim: $556 | Treatment: Paid in full over 5 years. | $28 per quarter |
| Nita Chaney | Claim: $1,036 | Treatment: Paid in full over 5 years. | $52 per quarter |
| Raymond Cox | Claim: $1,847 | Treatment: Paid in full over 5 years. | $93 per quarter |
| Renato Marshall | Claim: $2,399 | Treatment: Paid in full over 5 years. | $120 per quarter |
| Stenneth E. Powell, Jr. | Claim: $5,785 | Treatment: Paid in full over 5 years. | $290 per quarter |

These quarterly payments represent the minimal payment due. The debtor may, within its discretion, choose to pay certain claims at an accelerated rate.

**Class V: Unsecured Claims of Insider**

Debtor scheduled a debt of $200,000 owed to Pastor Powell. No distributions will be made on this claim due to the close relationship between the debtor and Pastor Powell, the span of time

over which these loans were made, and the absence of any accompanying loan documents evidencing the debt.

**Unless otherwise specified in a proof of claim, payments will be mailed to the creditor's scheduled address. Each payment will be accompanied by a copy of the confirmation order. If a payment is returned more than three times, the claim will be deemed disallowed.**

**Leases:**

Debtor assumes all contracts.

| | | |
|---|---|---|
| BSFS Equipment Leasing | Phone system | Assume – pay contractual amount |
| CEI -- The Digital Office Copmany | Copier | Assume -- Pay contractual amount |
| Hammond Suzuki USA | Musical equipment | Assume -- Pay contractual amount |
| Spring Leasing | Floor buffer | Assume -- Pay contractual amount |

### Article III
### Additional Provisions

**Voting and objecting:** Creditors wishing to participate in the confirmation of this plan by voting or objecting to this plan should follow the instructions contained in the attached "Order Conditionally Approving Plan." The debtor may attempt to confirm this plan notwithstanding the objection or rejection of creditors under 11 USC §1129.

**Confirmation Requirements and Procedures:** To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

    1. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes II, III, and IV are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Though impaired, class V is an insider class and is not eligible to vote.

### a)  What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the debtor has scheduled the claim on the debtor's schedules, unless the claim has been scheduled as disputed, contingent, or un-liquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a non-governmental proof of claim in this case is April 10, 2013.*

### b)  What Is an Impaired Claim?

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### c)  Who is Not Entitled to Vote

The holders of the following five types of claims are *not* entitled to vote:

1. Holders of claims that have been disallowed by an order of the Court.

2. Holders of other claims are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

3. Holders of claims in unimpaired classes;

4. Holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

5. Holders of claims in classes that do not receive or retain any value under the Plan;

6. Administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

### d)  Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### 2. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

#### a) Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

#### b) Treatment of Non-accepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram-down" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### 3. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation case. Based on the liquidation analysis, the debtor anticipates paying all creditors in full.

### 4. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the Plan.

#### a) Ability to Initially Fund Plan

The Plan Proponent believes that the debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

#### b) Ability to Make Future Plan Payments And Operate Without Further Reorganization

In the event that the debtor is unable to pay its creditors out of its continued operations, it retains the ability to sell the assets and pay all its debts in full.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

**Discharge:** All consideration distributed under the plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all claims of any nature whatsoever against the debtor. Upon the Effective Date (May 1, 2013) the debtor shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all claims, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502 of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of a Claim based upon such debt accepted the Plan. Except as otherwise provided in the plan, the order shall be a judicial determination of discharge of all liabilities of the debtor as of the Effective Date. From and after the Effective Date all persons who have held, hold, or may hold Claims against or Equity Interests in the Debtor, other than holders of liens preserved by the Plan, are permanently enjoined from taking any of the following actions with respect thereto against the Debtor or the Reorganized Debtor: (a) commencing or continuing, in any manner or in any place, any action or other; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Reorganized Debtor; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

**Material Tax Consequences:** Interested parties should consult with a tax professional to determine what, if any, material tax consequences might arise from the confirmation of this plan.

**Vesting of Property of the Estate.**  Property of the estate shall vest with the debtor upon confirmation of the plan.

February 14, 2013

Abundant Life Church of God in Christ
By Stenneth E. Powell

Travis Sasser
2000 Regency Parkway
Suite 230
Cary, NC 27518



EXHIBIT A

| Asset | Value | Encumbrance | Exemption | Liquidation value |
|---|---|---|---|---|
| 4400 Old Poole Road, Raleigh NC | $7,000,000 | $3,769,988 | None | $3,230,012 |
| Cash and money in bank accounts on petition date | $4,200 | Cash collateral lien of FCRG | None | None |
| 2006 Ford E350 | $9,475 | None | None | $9,475 |
| 2009 Ford E350 | $15,950 | $4,512 | None | $11,438 |
| 2002 Chevrolet Express | $3,575 | None | None | $3,575 |
| 1998 Lincoln Town Car | $1,175 | None | None | $1,175 |
| Fixtures, equipment, supplies, musical instruments, etc. | $50,000 | None | None | $50,000 |



# United States Bankruptcy Court
### Eastern District of North Carolina

In re  __Abundant Life Church of God In Christ, Inc.__                               Case No.  __12-08617-8-SWH__
                                                   Debtor(s)         Chapter  __11__

## Post-Confirmation Budget

**PART A - GROSS BUSINESS INCOME FOR PREVIOUS 12 MONTHS:**

    1. Gross Income For 12 Months Prior to Filing:                    $ _____1,194,302_____

**PART B - ESTIMATED AVERAGE FUTURE GROSS MONTHLY INCOME:**

    2. Gross Monthly Income                                          $ _____95,000_____

**PART C - ESTIMATED FUTURE MONTHLY EXPENSES:**

| Item | Amount |
|---|---|
| 3. Net Employee Payroll (Other Than Debtor) | $ 35,856 |
| 4. Payroll Taxes | 4,300 |
| 5. Meals | 500 |
| 6. Musician and media compensation | 8,000 |
| 7. Apartment rental for music minister | 1,560 |
| 8. Utilities | 5,405 |
| 9. Office expenses and supplies | 2,200 |
| 10. Repairs, maintenance, landscaping, etc. | 2,100 |
| 11. Vehicle expense | 600 |
| 12. Travel | 1,000 |
| 13. Legal and outside services | 500 |
| 14. Insurance | 895 |
| 15. Proposed payment to Class I | 651 |
| 16. Proposed payments to Class II | 86 |
| 17. Proposed payments to Class III | 25,404 |
| 18. Proposed payments to Class IV | 1,710 |
| 19. Benevolence, denomination dues, and related church donations | 2,000 |

    19. Total Monthly Expenses (Add items 3-21)                    $ _____92,767_____

**PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:**

    20. AVERAGE NET MONTHLY INCOME (Subtract item 22 from item 2)   $ _____2,233_____